UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMPEROR ELDER,<br><br>    Plaintiff,<br><br>    v.<br><br>COOK COUNTY SHERIFF'S OFFICE; THOMAS J. DART; UNIDENTIFIED DEPUTIES,<br><br>    Defendants. | No. 14 C 6495<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Emperor Elder pro se alleges that Defendants violated his civil rights while he was detained in the Cook County Jail (the "Jail"). R. 29. Defendants move for summary judgment on all his claims. R. 38. For the following reasons, Defendants' motion is granted.[1]

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013).

---

[1] Elder never sought to have counsel appointed for him. At status hearings on October 20 and December 15, 2014, the Court encouraged Elder to visit the Court's pro se assistance desk.

To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Elder was arrested on March 4, 2014 for contempt of a court order to pay child support. R. 38-1 at 68-69; R. 38-3. He testified that he experienced seizures upon his arrest, so he was taken to the emergency room. R. 38-1 at 68-69. Later that day he was taken to the Cook County Jail where he was detained until March 9, 2014. *Id.* at 65.

### I. Elder's Health Condition

Upon his arrival at the Jail on March 4, Elder testified that he was examined by a doctor, including having a CT scan. *Id.* at 70, 101. The doctor prescribed specific living conditions and multiple medications for a variety of Elder's diagnosed disabilities. *Id.* at 71. Specifically, Elder testified that he has the following conditions:

> Epilepsy. . . . Degenerative disc disease, gangrene, susceptibility, . . . brachial plexus neuropathy, severe brain injury. . . . I have a host of surgical implants, no sense of pressure, texture or anything as far as my left side goes. Chronic pain, chronic spasms, chronic seizures, both gran mal and partial.

*Id.* at 74. Elder testified that Jail personnel ignored or denied, in whole or in part, the doctor's orders and prescriptions. *Id.* at 73, 78, 96. Yet, Elder also testified that he was taken to the hospital for a psychological evaluation on March 6. *Id.* at 97-98.

On March 8, 2014, Elder requested further medical attention because he suffered a seizure. *Id.* at 84. Elder testified that the Jail personnel failed to provide him medical treatment and instead "laughed" at him, "mocked" him, and "drag[ed]" him to another room in the Jail, *id.* at 84-85, which Elder alleges constituted a battery. *Id.* at 156. Elder also testified that other inmates witnessed this incident. *Id.* at 83-84.

Elder also testified that he experienced chest pains during the duration of his five-day detention. *Id.* at 103. He testified that he was given an EKG on March 9. *Id.* at 157.

## II. Elder's Religion

Elder testified that during his intake process at the Jail on March 4, he informed Jail employees that he is a practitioner of the Hermetic philosophy. *Id.* at 114-15. Each of the five days Elder was detained at the Jail, he requested a copy of the Kybalion, the religious book of Hermeticism; however, Elder was only offered a King James Bible. *Id.* at 119-20. For a short period of time, thereafter, Elder testified that unidentified Jail employees offered Elder manuscripts of more

3

"conventional" religions, and verbally abused him for his "unconventional" beliefs. *Id.* at 120-21.[2]

### III. Elder's Name

Elder's legal first name is "Emperor." R. 38- 2. The Order of Adjudication that led to Elder's incarceration identifies him as "Anthony Elder AKA Emperor." *See* R. 38-3. Elder testified that his Illinois state identification card and his social security card identify him as "Emperor." R. 38-1 at 106-07. Elder also testified that while he was detained at the Cook County Jail he was forced to use the name "Anthony." *Id.* at 110-12. This made him "feel like" a "slave." *Id.* at 140.

### IV. Elder's Access to the Law Library

Elder also testified that he requested access to the Jail's law library on numerous occasions, as well as for the legal documents that led to his incarceration. *Id.* at 141-42. Elder testified that Jail employees consistently denied or ignored his requests, and that he was never given access to any legal information while he was detained. *See id.*

### V. Elder's Claims

Elder makes the following claims on the basis of his treatment while at the Jail: Count I for deliberate indifference to his medical needs; Count II for denial of religious freedom and practice; Count III for failure to intervene; Count IV for

---

[2] Elder also testified that he was not given a private place to pray. But Elder did not make a claim regarding this basis in his complaint, and he did not testify that he ever actually requested a private place to pray. Defendants argue that the First Amendment does not entitle Elder to a private prayer space. But since Elder has not made a claim on this basis, and did not testify that he ever made such a request, there is no claim for the Court to address on this motion.

4

denial of access of legal information; and Count V for conspiracy, as well as "violation of rights that may be protected by the laws of Illinois, such as false arrest, assault, battery, false imprisonment, malicious prosecution, conspiracy, and/or any other claim that may be supported by the allegations of this complaint." *See* R. 29.

## Analysis

### I. The Defendants

As an initial matter, there is insufficient evidence to demonstrate that any of the defendants in this case can be held liable for that harm Elder alleges. The Court will address each defendant in turn.

#### A. Sheriff Dart

"A plaintiff bringing a civil rights action must prove that the defendant personally participated in or caused the unconstitutional actions." *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (quoting *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003)). Elder has made no allegations that Sheriff Dart participated in or caused the harm Elder alleges, let alone produced any evidence to that effect. Thus, summary judgment is granted in Sheriff Dart's favor.

#### B. Unidentified Deputies

A plaintiff's "[f]ailure to identify a defendant during discovery, and the consequential failure to serve that defendant with process, requires dismissal of the unknown and unnamed defendant." *Frazier v. City of Chicago*, 2015 WL 2147678, at *2 (N.D. Ill. May 6, 2015) (*citing Williams v. Rodriguez,* 509 F.3d 392, 402 (7th Cir. 2007)). In October 2014, at the Court's direction, Defendants produced documents to

5

Elder relevant to his detention in the Jail. Four months later on February 4, 2015, the Court dismissed Elder's original complaint without prejudice for failure to state a claim. R. 26. At a status hearing on February 19, 2015, at which Elder indicated that he planned to file an amended complaint, the Court specifically explained to Elder that in dismissing his original complaint the Court had identified weakness in his *Monell* claims, and that he needed to use discovery to seek the names of the individual Sheriff's Deputies and other Jail employees who he came in contact with while he was detained. Further, the Court described for Elder the style of letter he should write to Defendants seeking such information. At a status hearing on April 16, 2015, Defense counsel represented, and Elder did not contest, that Elder had served additional document requests on Defendants and Defendants had produced several hundred pages of documents in response.

Four months later, discovery closed on August 31, 2015. At a status hearing the next day on September 1, 2015, Elder acknowledged that he had received all the discovery he sought and that he was prepared to respond to Defendants' motion for summary judgment. Despite eleven months of discovery and specific instructions from the Court regarding the kind of evidence Elder needed to discover, Elder has failed to identify individual defendants responsible for his alleged harm. Elder cannot go to trial against unnamed defendants, thus dismissal is appropriate. *See Williams*, 509 F.3d at 402 ("Discovery was [the plaintiff's] opportunity to identify this defendant, and he failed to do so before discovery closed . . . Due to [the plaintiff's] failure to identify this defendant . . . the district court's grant of

6

summary judgment for this unknown and unnamed defendant is modified to dismiss this defendant from the case.").

### C. Cook County Sheriff's Office

"A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690 (1978)).

The Court dismissed the *Monell* claims in Elder's original complaint because he failed to allege that

> 'an official with final policy-making authority' caused his injuries, and he . . . made only a conclusory allegation that his alleged injuries are the result of a custom or policy of the Sheriff (or any other entity for that matter). He purports to describe the custom or policy that caused his injuries, but Elder's description is merely a list of rights he believes detainees possess while they are in jail. *See* R. 12 ¶ 6. Nowhere in his complaint does Elder explain what custom or policy caused his injuries. Because he has failed to do that, his claims against the Sheriff (and any other municipal entities) are dismissed.

R. 26 at 6 (*Elder v. Dart*, 2015 WL 509555, at *3 (N.D. Ill. Feb. 4, 2015)). Elder's operative amended complaint suffers from the same deficiency, and he was unable to discover evidence that he was harmed by any policy, custom, or practice of the Sheriff's Office. Although Elder alleges that he was denied the prescription medication he needed while he was detained, he has not discovered any evidence

7

that he suffered these alleged harms as the result of a Jail policy, custom, or practice. As the Court noted in dismissing Elder's claims previously, "it is not impossible for a plaintiff to demonstrate the existence of an official policy or custom by presenting evidence limited to his experience. However, it is necessarily more difficult for a plaintiff to demonstrate an official policy or custom based only on his own experience because what is needed is evidence that there is a true municipal policy at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (internal citation omitted). For this reason, courts in this district generally dismiss *Monell* claims in which "[a]ll of the allegations in the Complaint pertain exclusively to [the plaintiff]." *Davis v. Metro. Pier & Exposition Auth.*, 2012 WL 2576356, at *12 (N.D. Ill. July 3, 2012); *Lewis v. County of Cook*, 2011 WL 839753, at *14 (N.D. Ill. Feb. 24, 2011) (dismissing *Monell* claim because the plaintiff "does not allege facts supporting retaliatory conduct against anyone other than herself"); *Travis v. City of Chicago*, 2012 WL 2565826, at *5 (N.D. Ill. June 29, 2012) ("although [the plaintiff] states that he himself made complaints, he does not identify any other people who complained to the City"). No reasonable jury could reasonably infer from Elder's experience alone that a custom or practice caused Elder's alleged injuries. For that reason, summary judgment in favor of the Sheriff's Office is granted.

## II. Substantive Claims

The Court has granted summary judgment to all Defendants. Nevertheless, even if Elder had been able to identify a state actor responsible for his alleged harms (which he has not), some of his claims would also fail on the merits.[3]

### A. Count II – Denial of Religious Freedom

Elder claims that Jail employees violated his First Amendment right to freedom of religion by (1) by offering him a King James Bible, as opposed to a Kybalion, the official book of Hermeticism, the religion Elder follows, and (2) by referring to him as "Anthony Elder" as opposed to "Emperor Elder." R. 29 at 3-4. Failing to provide Elder with a Kybalion did not put "substantial pressure on [Elder] to modify his behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016). Elder testified that he owns a copy of the Kybalion and that he could have asked a family member or friend to bring it to him, but he was unwilling to have such a "prized possession" brought to an environment where officials were denying him that same possession. R. 38-1 at 120-21. Thus, no reasonable jury could find that Jail employees denied Elder of his First Amendment right to freedom of religion by failing to provide him with a copy of the Kybalion,

---

[3] Elder testified that he was prescribed certain medication when he entered the Jail, that he was denied that medication, and that he then suffered a seizure. Defendants have not produced any evidence to show that Elder's testimony is false as a matter of law. If Elder had identified an individual who was personally involved in withholding or otherwise preventing him from taking his medication, the Court may have denied summary judgment on that claim and his claim for failure to intervene. But as discussed earlier, Elder has failed to identify any such individual.

since Elder chose not to take advantage of an opportunity to have a copy brought to him.

With regard to Elder's name, the Seventh Circuit has held that "legitimate interests in maintaining security and order within prisons support requiring inmates to use their committed names [i.e., the name on their paperwork when they were admitted to the jail] unless a state court approves a change-of-name application." *See Mutawakkil v. Huibregtse*, 735 F.3d 524, 526 (7th Cir. 2013). Elder was arrested pursuant to a contempt of court order that identified him as "Anthony Elder AKA Emperor." Under those circumstances the Jail had a legitimate basis for referring to Elder as "Anthony." This is especially true considering that Elder was only in the Jail for five days and it would be unreasonable to expect the Jail to determine that Elder had legally changed his name to "Emperor" within that five day period. Thus, summary judgment in Defendant's favor is appropriate.

### B. Count IV – Denial of Access to Courts

Additionally, Elder alleges that Jail personnel denied him access to the Jail's law library and to legal documents pertaining to his incarceration. R. 29 at 5. In order to succeed on a claim for denial of access-to-court, "the prisoner must prove that prison officials failed to assist in the preparation and filing of meaningful legal papers . . . [and] some quantum of detriment caused by the challenged conduct." *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). Elder testified that he was denied access to a law library. But he did not testify or produce any other evidence showing that this denial "prejudiced" him with respect to a legal proceeding. *See*

10

*Howard v. Webster*, 339 Fed. App'x 616, 618 (7th Cir. 2009) ("[B]ecause [the Constitution provides a right] to access the courts rather than legal materials or law libraries, an inmate will not have a valid claim unless the prison authorities' conduct prejudiced a potentially meritorious challenge to his conviction, sentence, or conditions of confinement."). Absent such evidence, no reasonable jury could find in Elder's favor and summary judgment against him is appropriate.

### C. Count V (paragraphs 34-38) – Conspiracy

Elder also alleges that Defendants "[c]onspired together to violate one or more of [his] civil rights." R. 29 at 5. As discussed earlier, Elder has failed to identify any particular person who allegedly conspired against him. Having failed to do so, it is also impossible for Elder to produce evidence of an agreement between two or more individuals, which is necessary to succeed on such a claim. *See Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015).

### D. Count V (paragraph 39) – False Arrest, False Imprisonment, and Malicious Prosecution

The Court previously addressed these claims in its opinion regarding the motion to dismiss Elder's original complaint.

> Under Illinois law, probable cause is a defense to false arrest, false imprisonment, and malicious prosecution. *See Gauger v. Hendle,* 954 N.E.2d 307, 327 n.6 (Ill. App. Ct. 2d Dist. 2011) ("If probable cause existed for the arrest, an action for false arrest cannot lie."); *Martel Enters. v. City of Chicago,* 584 N.E.2d 157, 161 (Ill. App. Ct. 1st Dist.1991) ("Probable cause is an absolute bar to a claim of false imprisonment."); *Johnson v. Target Stores, Inc.,* 791 N.E.2d 1206, 1219–20 (Ill. App. Ct. 1st Dist. 2003) ("If it appears that there was probable cause to institute the proceedings, such fact alone constitutes an absolute bar to an action for malicious prosecution."). The Court has taken judicial notice of an order of contempt issued by the Illinois

> Circuit Court. This order directed the Sheriff to arrest Elder and gave the Sheriff probable cause to do so. Moreover, the Sheriff had no discretion to ignore this order. Since the Sheriff had probable cause to arrest Elder, Elder has failed to state a claim for false arrest, false imprisonment, and malicious prosecution, and those claims are dismissed.

R. 26 at 9 (*Elder*, 2015 WL 509555, at *4). Discovery has not revealed any new facts regarding Elder's state law claims. As a result, the Court's analysis is unchanged and still applies to Elder's false arrest, false imprisonment, and malicious prosecution claims. Therefore, no reasonable jury could find for Elder with respect to his state claims.

## Conclusion

For the foregoing reasons, Defendants' motion for summary judgment, R. 38, is granted.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 7, 2016